IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORNELIUS PATTERSON,

                Plaintiff,         Case No. 3:04 CV 7019

  -vs-

                                               MEMORANDUM   OPINION

UNITED STEELWORKERS OF
AMERICA, LOCAL 9,

                Defendant.

KATZ, J.

## BACKGROUND

This matter is before the Court on Defendant's motion for summary judgment and/or for dismissal, Plaintiff's opposition and Defendant's reply thereto.  Also before the Court is Defendant's motion to the strike jury demand from the Amended Complaint as well as Plaintiff's motion for a jury trial.  For the reasons stated below, Defendant's motion for summary judgment is well taken and the remaining motions are denied as moot.

As noted in the previous Memorandum of December 16, 2004, Plaintiff Cornelius Patterson has been employed with Pilkington since 1972 and is a member of United Steelworkers of America Local 9 ("Union").  Patterson filed this action on January 13, 2004 against the Union alleging violations under Title VII and the concomitant Ohio statute.

The Court now addresses the challenged claims *in seriatim*.

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

*A. Summary Judgment Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General*

*Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

B. Title VII

Initially, the Defendant seeks summary judgment on Plaintiff's claim made pursuant to Title VII, 42 U.S.C. § 2000e-2, alleging a failure to process grievances on the basis of race. To be successful

under a Title VII claim based upon race regarding a union's representation, a plaintiff must establish the following:

> (a) the employer committed a violation of the collective bargaining agreement; (b) the union permitted the violation to go unrepaired, thereby breaching its own duty of fair representation; and (3) the union was motivated by racial animus. *See Bugg v. International Union of Allied Indus. Workers, Local 507 AFL-CIO,* 674 F.2d 595, 598 n.8 (7th Cir.), *cert. denied,* 459 U.S. 805 (1982).

*Vargas v. Hill,* 152 F.Supp.2d 315, 318-319 (S.D.N.Y. 2001). *See also, Greenslade v. Chicago Sun-Times, Inc.,* 112 F.3d 853, 866 (7th Cir. 1997); *E.E.O.C. v. Reynolds Metals Co.,* 212 F.Supp.2d 530, 539-540 (E.D. Va. 2002); *Salvadori v. Franklin School Dist.,* 221 F.Supp.2d 957, 965 (E.D. Wis. 2001), *aff'd* 293 F.3d 989 (7th Cir. 2002).

In June 2002, Plaintiff filed his unfair labor practice charge against the Union for failing to process grievances on the following matters: (1) seniority rights; (2) pay-for-skills; (3) harassment from a supervisor; (4) overtime; and (5) discrimination. Following an adverse ruling to his charge, the Plaintiff withdrew the claim.

Subsequently in March 2003, Plaintiff filed a second UPL charging the Union with "fail[ing] and refus[ing] to process a grievance on behalf of Patterson regarding seniority rights for discriminatory and arbitrary reasons."

Plaintiff testified that in June 2002 he was left to work alone in the "hot room" with no supervision and reported the incident to his Union representative. A subsequent meeting was held with Plaintiff, the Union Steward, two company officials and Plaintiff's supervisor. It was Plaintiff's understanding that his supervisor was unaware of the rule against having only one employee in the "hot room," however, Patterson conceded that he was allowed to exit the room at any time he became overheated and needed

4

cooler air. Although the grievance was written up and discussed at that meeting, according to Plaintiff during subsequent conversations with Judy Davenport, the Union vice-president, Plaintiff was advised this grievance was passed to the international representative.

Regarding his supervisor, Castle, the Plaintiff testified he was subjected to daily harassment by him and others, including his Union representative, Gerald Meinen, for not filing grievances for Patterson. In describing how he was harassed by Castle, Plaintiff provided the following example:

> A. . . . Like jobs I asked for, he'll ask another mechanic if he want to do it, you know. If I volunteer for a job, that means that's my job right there.
>
> Q. Why do you say its your job?
>
> A. Because the guy who has more seniority had already chose his job for the day.
>
> Q. So you're saying he didn't let you pick your job?
>
> A. I'm saying he allowed me to do the job, but the way he worded things during the time the job was given to me.
>
> Q. Give me specifics about how he worded it.
>
> A. Specifics, okay. Mr. Baldwin, who has more seniority than I, had chose the job that he wanted for that day. Castle made it sound like Rick Baldwin was a better person for that job and he felt as though Rick should be able to do that job instead of me. You know those things.

(Patterson Dep. at pp. 59-60.) The Plaintiff also complained of Castle calling him on his company cell phone and then saying he had the wrong number. From July 2002 to April 2004, this occurred approximately ten times, according to Patterson. (Id. at pp. 63-65.)

The Plaintiff also cites as an example of hidden racism through the singing of songs such as the "Mickey Mouse" song or the children's rhyme "Eeny-meeny, miney, mo." Plaintiff testified he heard co-

5

workers repeating this rhyme but not his supervisor. Castle, however, along with other co-workers did engage in singing the Mickey Mouse song. (Id. at pp. 74-77.) Additionally, Patterson testified about the talk between his co-workers about coon hunting which he interpreted as a racial slur.

With regard to pay-for-skill classes, Patterson testified that when these classes were available for him there was no cover shift for him. In other words, there was no one to cover for Plaintiff if he wanted to take these classes during his scheduled work hours. In his deposition, Plaintiff testified he believed he was entitled to the pay increase which was part of the pay-for-skill classes due to his seniority and the obstacles placed in his path by the employer. (Id. at pp. 130-138.) The Plaintiff did not deny that he received a retroactive payout for the pay-for-skill in 2003 but still believed he was entitled to retroactive pay as far back as 2001, the date the classes were first offered to employees. (Id. at p. 145.) Patterson also testified that he was not assigned overtime by Meinen who was in charge of assigning the overtime. (Id. at p. 150.)

A union's breach of fair representation "occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Driver v. U.S. Postal Service, Inc.,* 328 F.3d 863, 863 (6th Cir. 2003), quoting *Vaca v. Sipes,* 386 U.S. at 190 (1967). This Court has reviewed Plaintiff's deposition in its entirety as well as the referenced affidavits in the NLRB charges. Having considered all of the admissible testimony in the light most favorable to the Plaintiff, the evidence when viewed either separately or cumulatively amounts to mere generalized complaints against the Union.

Even if the first two prongs of the analysis were met, the record does not demonstrate racial animus to satisfy the third prong. In sum, the Plaintiff has not met his burden to withstand Defendant's

6

challenge to his Title VII claim. Accordingly, the Court finds the Defendant is entitled to judgment as to Count One of the Amended Complaint.

*C. State Law Claim*

It is also unlawful under Ohio law "[f]or any employer, because of the . . . sex, national origin. . . [or] age. . . of any person . . . to discharge without cause . . . or otherwise to discriminate against that person with respect to hire, tenure, terms conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A). The Ohio Supreme Court has held that the coverage of § 4112.02(A) is identical to the coverage of federal law prohibiting discrimination in the employment context. Thus, evidence sufficient to support a finding of discrimination under Title VII of the Civil Rights Act of 1964 is necessary before a violation of § 4112.02(A) can be demonstrated. *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981); *see also, Little Forest Medical Ctr. of Akron v. Ohio Civil Rights Comm' n,* 61 Ohio St.3d 607, 609-10, 575 N.E.2d 1164, 1167 (1991), *cert. denied,* 503 U.S. 906 (1992).

While this Court is not persuaded on preemption of the state law claims, the viability of those claims are subject to the same infirmities under a Title VII analysis. As the Court has determined there is no viable claim sustained under Title VII, the state law claim is likewise subject to summary judgment as a matter of law.

## CONCLUSION

Accordingly and for the reasons stated above, Defendant's motion for summary judgment (Doc. No. 50) is granted. Defendant's motion to dismiss (Doc. No. 50) and motion to strike jury demand

(Doc. No. 49) are denied as moot. Finally, Plaintiff's motion for a jury trial (Doc. No. 53) is also denied as moot.

    IT IS SO ORDERED.

                                             s/ *David A. Katz*
                                             DAVID A. KATZ
                                             SENIOR U. S. DISTRICT JUDGE